UNITED STATES of America

v.

Rocco Albert D'AMATO, a/k/a
"Ricky" et al.

Crim. No. 71–266.

United States District Court,
E. D. Pennsylvania.

March 22, 1972.

Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., Stephen Stein, Sp. Atty., U. S. Dept. of Justice, Organized Crime and Racketeering Strike Force, Philadelphia, Pa., for plaintiff.

Herbert G. Hardin, Philadelphia, Pa., for D'Amato.

Robert M. Pressman, Philadelphia, Pa., for Marena.

Arthur A. Moorshead, Devon, Pa., for Morettini.

Alvin J. Bello, Philadelphia, Pa., for Scirrotto.

Harry S. Tischler, Philadelphia, Pa., for Ennis.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

Presently before the Court are several pre-trial motions filed on behalf of five of the eleven defendants named in the Indictment. By a motion to suppress evidence obtained by the Government through the use of two wiretaps, all five defendants jointly challenge the procedure by which the taps were authorized. Four of the defendants have made several additional motions which, but for the exceptions noted, are substantially the same and raise identical legal issues.

## MOTION TO SUPPRESS

■ Defendants D'Amato, Marena, Morettini, Scirrotto, and Ennis challenge the procedure through which the Government obtained the wiretaps. In light of the Fifth Circuit's decision in United States v. Robinson, No. 71–1058 (5th Cir. Jan. 12, 1972), the defendants commonly assert that the method by which the Attorney General of the United States authorized the wiretap applications was not in compliance with the procedure mandated by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, specifically, by section 2516(1) thereof, 18 U.S.C. § 2516(1), (1970)[1] Defendants argue that the Government failed to secure the authorizations actually required by section 2516(1). They assert that the letters attached to the applications, though purportedly signed by specially designated Assistant Attorney General Will Wilson, were in fact never read, signed, dictated, or approved by him. In United States v. Robinson, *supra*, the Attorney General neither personally authorized the wiretap application nor personally designated a special Assistant Attorney General to do so. In the present case, however, the Attorney General himself specially designated Assistant Attorney General Will Wilson to authorize applications for each of the separate wiretaps complained of. In United States v. Iannelli, 339 F. Supp. 171 (W.D.Pa.1972), Judge Joseph Weis, Jr. held that this distinction was sufficient to validate the wiretap authorization there challenged. This Court concurs with Judge Weis and holds that the Government has complied with 18 U.S.C. § 2516(1).

■ In paragraphs four and five of her Motion to Suppress defendant Nellie Ennis raises several issues not advanced by her co-defendants. First, she states that FBI agents made an illegal search and seizure of the sound of her voice while on her premises executing an otherwise valid, but limited, search warrant. The Government agents admit that, after warning the defendant of her rights, they purposely engaged her in conversation in order to familiarize themselves with the sound of her voice for later comparison with the voices in the wiretaps previously obtained. Because the search warrant being executed was applicable only to gambling paraphernalia, the defendant argues that the

1. "The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal Agency having responsibility for the investigation of the offense as to which the application is made . . . ." 18 U.S.C. § 2516(1) (1970).

agents' mental notation of the sound of her voice constituted an unreasonable search and seizure in violation of her Fourth Amendment rights. In support of her argument she cites *Schmerber*[2], *Wade*[3], and *In Re Dionisio*[4] for the proposition that voice exemplars have been placed within the umbrage of the Fourth Amendment. Citing *Chambers*[5] and *Coolidge*[6] for the proposition that all warrantless searches in the absence of exigent circumstances are invalid *per se*, she concludes that a search warrant was a necessary prerequisite to validate the Government agents' mental notation of the sound of her voice. Without such a warrant she contends that the identification of her voice as the same voice in the wiretap must be suppressed.

Though novel, the defendant's argument has no merit. First, there was no seizure. The defendant's voice was no more seized than was her physical appearance. Second, no device other than human memory was used to record the sound of her voice. Had a recording device been used there still would have been no more of a Fourth Amendment violation than if the defendant's physical appearance had been recorded photographically. Third, this Court does not fully adopt the interpretation of *Schmerber, Wade,* and *In Re Dionisio* suggested by the defendant. Even if it did, there still remains a vast distinction between compelling an individual to make a recorded voice exemplar from a prepared transcript and the Government's practice of having agents make mental notation of the sound of an individual's voice in random conversation for later comparison with voices recorded on legal wiretaps. Fourth, as a practical matter, none of the evils sought to be prevented by the Fourth Amendment have oc-

curred and suppression of the voice identification in the present case would not benefit the defendant in the least.

■ In addition to the foregoing, defendant Nellie Ennis further argues that certain incriminating statements made by her to a Government Agent after her arraignment should be suppressed on the basis of the fact that they were not made following a knowing and intelligent waiver of her right to remain silent and have legal counsel, either retained or appointed, present. The record, however, indicates that the defendant herself twice contacted the Government case agent to inform him that the charges against her were a great mistake. On each occasion she was fully warned of her Constitutional rights. Nonetheless, she insisted on explaining that her only involvement with the group of individuals indicted was as a one-time patron, not as a member of any organized gambling operation. Although it is again not apparent how the suppression of such evidence would substantially aid the defendant, this Court is of the opinion that any incriminating statements made during the course of either conversation were made after the defendant knowingly and intelligently waived her right to remain silent and to have counsel, either retained or appointed, present.

Each defendants' Motion to Suppress is, therefore, denied.

## MOTION FOR RELIEF FROM PREJUDICIAL JOINDER

■ Defendants Marena, Morettini, Scirrotto, and Ennis have made motions requesting relief from prejudicial joinder. Because all of the present defendants have been charged with a conspiracy in violation of 18 U.S.C. § 371, their

---

2. Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

3. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

4. In Re Dionisio, 442 F.2d 276 (7th Cir. 1971).

5. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

6. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

joinder is in conformity with Fed.R. Crim.P. 8(b), 18 U.S.C., which provides that:

> "Two or more defendants may be charged in the same indictment . . . if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

To date, no defendant has demonstrated any prejudice from his or her joinder other than that inherent in any trial involving multiple defendants. At this time, therefore, each defendant's Motion for Relief from Prejudicial Joinder, is denied without prejudice. Should the need arise and the interest of justice so require, each defendant may renew his or her motion during the course of the trial.

## MOTIONS FOR DISCOVERY, BILL OF PARTICULARS, AND PRODUCTION AND INSPECTION OF ALL MATTERS WITHIN THE PURVIEW OF 18 U.S.C.A. § 2510 ET. SEQ.

Defendants Marena, Morettini, Scirrotto, and Ennis have made substantially similar motions for discovery, bills of particulars, and production and inspection of all matters falling within the purview of 18 U.S.C.A. § 2510 et seq. Because the Government has continually consented to make available to the defendants all the tapes, transcripts, and documents which the defendants have a right to inspect, each defendant's motions are largely mooted. To the extent that each defendant's motions seek more than that already made available by the Government, they are denied.

## MOTION TO DISMISS

Defendants Marena, Morettini, and Scirrotto have joined in identical motions to dismiss. Each motion alleges several grounds for dismissal of the indictment. None of the arguments advanced are substantial or supported by law. Each defendant's motion to dismiss is, therefore, denied.