**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Anthony GEORGE, et al.,
Defendants-Appellants.**

**No. 72–1004.**

United States Court of Appeals,
Sixth Circuit.

Aug. 7, 1972.

Thomas A. Livingston, John L. Doherty, Livingston, Miller & Haywood, Pittsburgh, Pa., Karl W. Sommer, Jr., on brief, for appellants.

William W. Milligan, U. S. Atty., Robert Zitko, Asst. U. S. Atty., Columbus, Ohio, Sidney M. Glazer, and Robert J. Vedatsky, Attorneys, Criminal Div., Dept. of Justice, Washington, D. C., on brief, for appellees.

Before PHILLIPS, Chief Judge, KENT, Circuit Judge, and Mc-ALLISTER, Senior Circuit Judge.

KENT, Circuit Judge.

The defendants-appellants appeal from their convictions for illegal gambling activity in violation of Title 18 U.S.C.A. § 1955. In their appeals the defendants raise issues challenging the constitutionality of certain provisions of the Omnibus Crime Act, 18 U.S.C.A. § 2510 et seq., and also as to the admissibility of evidence of telephone conversations claimed to have been intercepted under an authorization order signed by the District Judge. For reasons which will appear we find it unnecessary to reach the constitutional issues presented by the defendants.

In its brief in this Court (pg. 3), the Government concedes that "a major portion of the Government's evidence in the case consisted of telephone conversations intercepted under an authorization order * * *."

Prior to trial the defendants made a motion to suppress evidence obtained by virtue of a search warrant, and also to suppress the evidence of the intercepted wire communications. One of the grounds urged in support of the motion to suppress was:

"14. Each of the aforesaid seizures was beyond the scope of the search purportedly allowed by the warrant and/or order, and those particular articles or communications seized are additionally tainted." (App. pg. 11).

In the motion no reference was made to the statute which provides that motions to suppress the contents of an intercepted communication may be made on the ground that "the interception was not made in conformity with the order of authorization or approval." 18 U.S.C.A. § 2518(10) (a) (iii).

During the course of the trial the defendants objected to the admission of

the tape recordings of intercepted conversations because the interceptions were made in violation of the Court order. App. pg. 314.

A brief examination of the facts is all that is required to clearly demonstrate that conversations were intercepted in utter disregard of the provisions of the order of the District Court. The order authorizing the wire tap provided in part as follows:

"(b) the interception of wire communications * * * shall be conducted only when surveillance by Special Agents of the Federal Bureau of Investigation indicate that William George or Joseph George is within the above-described premises, and shall be continued only when it is determined by voice recognition that William George or Joseph George is using the above-described pay telephone."
(App. pg. 386).

On the trial the Government Agent who had charge of the investigation, Delbert Roberts, testified:

"Q. You were the Agent-in-Charge? A. Yes.

Q. Were there any special directions given to them by you concerning the interceptions? A. Just that they were to record the gambling conversations along that line, yes.

Q. Were they provided with a copy of an order of this court? A. No, sir.

Q. You were provided with that, or were you? A. No, sir.

Q. You were not provided with that? A. No. That stays with the attorney, Your Honor.

Q. So that the copy of the order of the court was never given to you? In that case, you were simply told by the attorney that the interception was authorized; there was a court order signed, and that was satisfactory to you? A. Yes.

(543) Q. So that prior to the interception, you had no opportunity to read that order of court? A. No." (App. pg. 306);

and one of the other agents, assigned to monitor the telephones involved, testified:

"Q. You would first listen to the conversation and then turn it on, or would you just automatically turn it on? A. When I knew that there was a pickup, what we called a pickup, someone picked up the phone to call out, or an incoming call, a call was coming to that phone, we would (487) automatically turn the machine on.

Q. Agent Tomasso, during the time that you were sitting there recording these phone calls, did you know the voice of William Anthony George? A. Do you mean prior to even sitting down, listening, or during?

Q. No, prior to. A. No, sir.

Q. How about Joseph George? A. No, sir."

(App. pg. 276).

Thus, it is obvious that the evidence in this case obtained by electronic surveillance, allegedly pursuant to the statute, was obtained in a manner which violated the terms of the order authorizing the electronic surveillance. The motion to suppress could and should have been granted in accordance with the statute. 18 U.S.C.A. § 2518(10) (a) (iii). Separate and apart from the statutory provisions the evidence failed to comply with the standards set forth in Desist v. United States, 394 U.S. 244, 246, 89 S.Ct. 1030, 1032, 22 L.Ed.2d 248 (1968), where the Supreme Court said:

"We concluded that since every electronic eavesdropping upon private conversations is a search or seizure, it can comply with constitutional standards only when authorized by a neutral magistrate upon a showing of probable cause and under precise lim-

itations and appropriate safeguards. The eavesdropping in this case was not carried out pursuant to such a warrant, and the convictions must therefore be reversed if *Katz* (Katz v. United States, 389 U.S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576) is to be applied to electronic surveillance conducted before the date of that decision."

◼ At the time the Omnibus Bill was before the Senate, Senator Hart opposed its enactment and made the following statement:

"The eavesdropping and wiretapping authorized by Title III of S. 917, however, is essentially an indiscriminate dragnet * * *. Such a bug or tap [in continuous operation] will inevitably pick up all the conversations on the wire tapped or room bugged. Nothing can be done to capture only the conversations authorized in the tapping order." U.S.Code Congressional and Administrative News, 90th Congress, Second Session, 1968, page 2229.

Had the agents been given a copy of the order of the District Court they would have been in a position to avoid the objections to such surveillance stated by Senator Hart. But because of the failure to furnish a copy of the authorization order to the officers monitoring the calls the protective limitations of the order were completely defeated. If the agents of the Government are not required to comply with the limitations contained in an order authorizing interception of telephone calls then the purpose of such order would be defeated and the only limitation on such interceptions would be the discretion of the officers and the provisions of Title 18 U.S. C. § 2518(4)[1] would be a nullity. Obviously this was not the intent of the Congress at the time the statute was enacted.

We, therefore, hold that wire tap evidence secured without regard to the limitation set forth in the authorization order is inadmissible. On remand of the case no evidence of any telephone conversations secured under such circumstances shall be received in evidence.

The judgment of the District Court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

1. (4) Each order authorizing or approving the interception of any wire or oral communication shall specify—
   (a) the identity of the person, if known, whose communications are to be intercepted;
   (b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;
   (c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;
   (d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application; and
   (e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.
An order authorizing the interception of a wire or oral communication shall, upon request of the applicant, direct that a communication common carrier, landlord, custodian or other person shall furnish the applicant forthwith all information, facilities, and technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with the services that such carrier, landlord, custodian, or person is according the person whose communications are to be intercepted. Any communication common carrier, landlord, custodian or other person furnishing such facilities or technical assistance shall be compensated therefor by the applicant at the prevailing rates.