**UNITED STATES of America**
v.
**David MARDER et al.**

**UNITED STATES of America**
v.
**Sam WINER et al.**
**Crim. Nos. 71–414, 71–447.**

United States District Court,
S. D. Florida.
May 24; 1973.

Gary Betz, Dept. of Justice, for the United States.

Harvey J. St. Jean, Jerry J. Mosca, Eugene P. Spellman, Angus Stevens, Jr., Max Kogen, E. David Rosen, Walter E. Gwinn, L. M. Jepeway, Max Lurie, Ray Pearson, James L. Giulmartin, Richard B. Bergstresser, Daniel S. Pearson, Ronald I. Strauss, Nicholas J. Capuano, Miami, Fla., Joesph A. Varon, Hollywood, Fla., Milton E. Grusmark, Miami Beach, Fla., for defendants.

1. 468 F.2d 189 (5th Cir. 1972) (panel opinion); 472 F.2d 973 (5th Cir. 1973) (en banc); 359 F.Supp. 52 (S.D.Fla., 1973) (findings and conclusions upon remand).

## ORDER SUPPRESSING EVIDENCE OBTAINED BY ELECTRONIC SURVEILLANCE

MEHRTENS, District Judge.

The two captioned cases represent indictments pending before this Court in which proceedings had been stayed pending the decision by the United States Court of Appeals in United States v. Robinson.[1] These cases were included in this Court's consolidated evidentiary hearing held on March 19 and 20, 1973 to determine whether the applications for electronic interception orders presented to the judges of this Court were properly authorized. At that hearing the Court received the testimony of John N. Mitchell,, former Attorney General of the United States; Will Wilson, former Assistant Attorney General in charge of the Criminal Division of the Department of Justice; Henry E. Petersen, now Assistant Attorney General in charge of the Criminal Division and at all times relevant to these cases a Deputy Assistant Attorney General in the Criminal Division; Sol Lindenbaum, Executive Assistant to the Attorney General; and Harold Shapiro, then and currently a Deputy Assistant Attorney General in the Criminal Division. Numerous exhibits were received in evidence. Argument was heard and all counsel were given leave to file any additional memoranda they desired. The Court, having reviewed the court files, the record of the evidentiary hearing and all memoranda, makes the following findings of fact and conclusions of law.

The evidence upon which the indictments in these two cases are based was procured by the Government from the same wiretap. That wiretap was authorized by an order of this Court dated November 24, 1970 issued by the undersigned after a conference with Gary Betz, a trial attorney with the United States Department of Justice assigned to the Miami Strike Force office. At that conference Mr. Betz presented his

sworn application, an affidavit from the investigating agent, a proposed order and one of the now-famous Will Wilson letters, bearing Wilson's signature written thereon by Henry Petersen (Gov't Ex. 9). Except for the names of the defendants, the dates and the telephone numbers, the documents submitted to the undersigned on November 24, 1970 were identical with those submitted to this Court on June 17, 1969, when an order was issued authorizing the interception of telephone calls made by the defendants in the *Sklaroff* cases.[2] The documents and the apparent procedures followed by the officials of the Department of Justice in the authorization of the application for the wiretap order in the instant cases are sufficiently identical with those found by this Court in *Sklaroff* to require a like result, namely, suppression of the evidence obtained by the electronic surveillance. *See Sklaroff,* supra, 362 F.Supp. at 484.

The Court was deceived as much by the false and misleading Justice Department documents presented in these cases as it was in *Sklaroff.* The instant wiretap was procured nearly a year and one half after the *Sklaroff* tap. The Court by that time had become quite familiar with what it understood to be Mr. Mitchell's standard operating procedure in wiretap cases, *i. e.*, specially designating Wilson as the individual to exercise the awesome powers granted by the Congress in Title III. That procedure and the submitted documents which outlined that procedure appeared to the Court to be entirely consistent with the statutory framework designed by the Congress to fix the responsibility for wiretap authorizations in each case to an identified and identifiable *individual* who was subject to the political process. And the Court, these defendants and even the Government's own prosecuting attorney looked to Will Wilson as that individual responsible for the authorization decision in these cases.

After hearing the testimony of Mitchell and the others, it is now clear that Mr. Wilson was *never* specially designated to authorize applications for interception orders. All that the "Wilson" letters were intended to be were letters of transmittal to notify the attorney in the field that Mitchell had approved the application. We now know that Petersen and Shapiro normally signed Wilson's name for him on these letters. We now know that all of the first-person recitals in the "Wilson" letters were false, the actions having been taken and the decisions having been made not by Wilson, but by the Criminal Division of the Justice Department *institutionally.*

The "Interception Order Authorization" memorandum from Mitchell to Wilson (Government Exhibit 1), upon which the Government relies to establish Mitchell's personal role in the authorization procedure, was not before the Court prior to the issuing of the interception order. And even if it had been, the express language of that memorandum would have corroborated the Court's conclusion and belief at that time that Wilson had been specially designated by Mitchell to authorize the application within the express terms of Title III. Only with Mitchell's explanatory testimony, corroborated by Wilson, Petersen and Lindenbaum, is it evident that all of the authorization recitals in the documents upon which this Court relied in issuing the wiretap order, did not mean what the words written therein said.

For the reasons outlined in this Court's Order Suppressing Evidence Obtained by Electronic Surveillance issued May 24, 1973 in United States v. Sklaroff, *supra,* note 2, the evidence upon which the instant indictments are based must be suppressed. Suppression is required because the procedures followed by the Government in procuring the wiretap order of November 24, 1970 failed to comply with the express terms of 18 U.S.C. § 2518(1)(a) and because

---

2. United States v. Sklaroff, et al., 362 F. Supp. 478, Nos. 70–143–CR–WM, 71–612–CR–WM, 71–613–CR–WM, 71–614–CR– WM, 71–711–CR–WM (S.D.Fla. May 24, 1973) (Order Suppressing Evidence Obtained by Electronic Surveillance)

the Court's Order issued in reliance upon the accuracy of the Government's representations did not comply with § 2518(4)(d), in that the individual who personally exercised the power to authorize the application was not identified. This violated the Congressional mandate of fixing responsibility for initiating surreptitious electronic surveillance in an identified individual who was subject to the political process. Congress did not provide that the Title III power could be exercised generally by the Department of Justice, nor by the Criminal Division, nor even by the office of the Attorney General, but instead provided that it had to be exercised *personally* by the Attorney General or by one of the nine Assistant Attorneys General who was specially designated by the Attorney General. And Congress further provided that the individual who personally acted in each case had to be identified both in the Government's application and in the Court's order.

The Government's final memorandum suggests that the Ninth Circuit's opinion in United States v. Chavez,[3] which this Court cited with approval in *Sklaroff*,

> "ignored the fact that the procedure which resulted in the apparent misidentification has been revised, that all of the documents in the case do name former Attorney General Mitchell and clearly indicate that Mitchell took action in the case and was responsible in each case . . . ."
> (Memorandum of the United States, filed May 9, 1973 at 3)

While this Court finds it commendable that the Department of Justice has terminated what the *Chavez* court called "the paper charade," it cannot accept for a moment the conclusions of the Government's memorandum. The Court is willing to accept the assertions that "Mitchell took action in the case and was responsible in each case," but that

became apparent only after the courts began looking behind the factual representations that were made by the Government at the time it applied for interception orders. Mitchell's name does appear in the documents, but only in reference to having specially designated Wilson, which designation we now know never in fact occurred. That misidentification did occur is no longer debatable. These cases are only one instance out of many where these issues have been raised. *See* United States v. Robinson, 472 F.2d 973, 975 n. 1 (5th Cir. 1973) Presumably, following Mitchell's policy, this same misidentification occurred as a matter of course in every wiretap authorized during Mr. Mitchell's tenure as Attorney General, at least until November 20, 1971. On that date the practices condemned in *Robinson* and in *Sklaroff* were revised to conform with the express language of the statutes. Without Mitchell's candor in admitting that despite the plain language of all of these documents, that it was he who had personally exercised the authorization power in this instance and *not* Wilson, it would have been easy to look to Will Wilson as having been the responsible individual. Without the oral testimony, the after-the-fact affidavits, and except for the handwriting discrepancies in the "Wilson" signatures, everyone would *still* be looking to Wilson as having been the responsible individual.

At this point it does little good to attempt to examine the motive behind such procedures. The Court accepts the Government's good faith in finally putting all of the facts into the record and in amending the procedures to strictly conform to the statute. But that cannot serve to undo the deception which frustrated the Congressional mandate of identifying *the* official who initiated the interception of these defendants' private telephone conversations.

Upon consideration of the foregoing, it is

Ordered and adjudged that the evidence obtained from the electronic inter-

3.  478 F.2d 512 (9th Cir., 1973).

ception pursuant to this Court's Order of November 24, 1970 be and the same hereby is Suppressed.